## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**TONI A. MEDAWIS**,

        **Plaintiff,**

**vs.**                                            **No. CIV 10-402 JAP/RHS**

**MICHAEL J. ASTRUE**, **Commissioner**
**of the Social Security Administration,**

        **Defendant.**

### MEMORANDUM OPINION AND ORDER

Plaintiff Toni Medawis moves the Court to reverse or remand the Social Security

Administration's determination that Plaintiff was not disabled between December 2003 and May

2006.[1] The Magistrate Judge proposed to deny Plaintiff's Motion and to dismiss Plaintiff's case

with prejudice.[2] Plaintiff filed two written objections to the Magistrate Judge's Proposed

Disposition.[3] The Court has reviewed the parties' briefing, the Proposed Disposition, the

administrative record, and the applicable law. The Court concludes that Plaintiff's first objection

---

[1] On November 30, 2010, Plaintiff filed a MOTION TO REVERSE OR REMAND ADMINISTRATIVE AGENCY DECISION (Doc. No. 15) and a MEMORANDUM IN SUPPORT OF MOTION TO REVERSE OR REMAND ADMINISTRATIVE AGENCY DECISION (Doc. No. 16) (Motion). On February 4, 2011, Defendant Michael Astrue, Commissioner of the Social Security Administration, filed DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO REVERSE OR REMAND ADMINISTRATIVE AGENCY DECISION (Doc. No. 19) (Response). Plaintiff did not file a Reply.

[2] On November 7, 2011, the Magistrate Judge filed MAGISTRATE JUDGE'S ANALYSIS AND PROPOSED DISPOSITION (Doc. No. 27) (Proposed Disposition).

[3] On November 17, 2011, Plaintiff filed PLAINTIFF'S OBJECTIONS TO THE MAGISTRATES PROPOSED FINDINGS AND RECOMMENDED DISPOSITION (Doc. No. 28) (Plaintiff's Objections).

has merit and that Plaintiff's case should be remanded to the Commissioner of Social Security for further proceedings. The Court also concludes, with respect to Plaintiff's second objection, that if on remand the Administrative Law Judge (ALJ) finds that Plaintiff was disabled between December 2003 and May 2006, the ALJ should elicit the assistance of a medical advisor to establish the onset date of disability.

## BACKGROUND

On March 9, 2004, Plaintiff filed a claim for Social Security Disability Insurance and Supplemental Security Income Benefits.[4] Plaintiff alleges that she became disabled on December 1, 2003, due to a diabetic foot ulcer, angioplasty, a leg injury from 1983, asthma, high blood pressure, and depression. [AR 24, 73] Plaintiff's claims were denied at the initial level and the recommendation level, and on July 22, 2004, Plaintiff filed a request for a hearing before an Administrative Law Judge (ALJ). [AR 48-53] On April 20, 2006, an ALJ denied Plaintiff's claim. [AR 21-35] Plaintiff requested review by the Appeals Council, and the Appeals Council declined review on January 8, 2007. [AR 5-8] Plaintiff brought an action for judicial review in this Court. *See Medawis v. Barnhart*, No. CIV 07-232 JP/RHS. The Court reversed the ALJ's decision and remanded for additional proceedings regarding the severity of Plaintiff's mental impairment and depression. [AR 399-407]

On May 6, 2009, an ALJ held a second hearing on Plaintiff's March 2004 application for benefits to determine whether Plaintiff was disabled between December 1, 2003, and May 30, 2006. [AR 421-64] Plaintiff was present and was represented by counsel. [AR 423] Plaintiff testified about her medical history, education, and work history. Plaintiff explained that heart

---

[4] Plaintiff filed a subsequent claim for benefits and was found disabled as of June 2006. Plaintiff's second claim for benefits is not at issue in this case. [AR 377, 423]

disease was her worst health problem during the relevant time period. [AR 427] Plaintiff had two
stents placed in her heart and three stents placed behind her right knee. [AR 428] Plaintiff
testified that she also had diabetes and high blood pressure, which were not under control. [AR
428-29] Plaintiff stated she had pain in her legs and back [AR 428] and a gangrenous toe ulcer,
which took years to heal. [AR 430-31] Plaintiff also testified that she had been unable to walk
without pain during the relevant time period, that her pain was an 8-9 on a scale of 10, that she
had fallen down multiple times, and that she had walked with the assistance of a walker, two
crutches, one crutch, or a cane during much of the relevant time period. [AR 432, 437-39]

As for education, Plaintiff testified that she dropped out of high school in tenth grade but
later obtained a GED. [AR 454] Plaintiff then attended some college courses and nearly obtained
a two-year degree. [AR 454] Plaintiff testified that she had trouble with dyslexia. [AR 453-54]
Plaintiff worked as an executive assistant from 1992 to 1998, a secretarial/clerical position, but
she lost her job after testing positive for marijuana. [AR 450, 455-56] Between 1999 and 2001,
Plaintiff provided child care. [AR 450] From 2001 to 2002, Plaintiff worked as a program
specialist for a state agency. [AR 450-51] Plaintiff testified that she had not worked since August
2002. [AR 436-37, 451]

Vocational Expert ("VE") Pamela Bowman was also present at the May 6, 2009, hearing
and testified about Plaintiff's vocational ability. [AR 423, 457-64] The VE stated that she was
familiar with the Commissioner's regulations, the type and number of jobs in the national
economy, and the record in Plaintiff's case. [AR 457-58] The ALJ asked the VE to "assume a
hypothetical individual" with Plaintiff's age, education, and vocational background, and with the
following functional restrictions: (1) "limited to light level work"; (2) "can occasionally use
ramps and stairs, but cannot use ladders, ropes, or scaffolds"; (3) "must be afforded a sit-stand

option during the workday of one to two minutes every hour or so"; (4) "limited to simple tasks that are not performed in a fast paced environment, and involve only simple work-related decisions"; (5) "only few workplace changes"; (6) "can attend and concentrate two hours at a time"; and (7) can occasionally interact with "supervisors, coworkers, and the general public." [AR 458-59] The ALJ asked the VE if there were any jobs in the national or regional economy that the hypothetical individual would be able to perform. [AR 460]

The VE reported that there was "one job" that would accommodate "the sit and stand of one to two minutes every hour or so, and no fast pace, in the light area." [AR 460] That job is "shipping and receiving weigher, light, unskilled, with an SVP of 2." [AR 460 (citing DOT 222 387 074)] The VE reported that for shipping and receiving weighers there are 260,000 jobs in the national economy and 300 jobs in New Mexico. [AR 460] The ALJ asked if the job of shipping and receiving weigher was consistent with the limitations he had specified, and the VE said "yes." [AR 460] The ALJ asked if the VE's testimony was "consistent with the Dictionary of Occupational Titles [DOT]," and the VE said "yes." [AR 460] The VE also testified that Plaintiff would be precluded from working as a shipping and receiving weigher if she needed to sit for 20-30 minutes/hour, stand 5-10 minutes/hour, and could only lift between 5-6 pounds. [AR 461-62] On cross-examination, the VE testified that if Plaintiff had a moderate problem with concentration and/or a moderate impairment in dealing with other people, those issues would prevent Plaintiff from working as a shipping and receiving weigher. [AR at 462-63]

On June 15, 2009, the ALJ issued a written decision concluding that Plaintiff was not disabled between December 2003 and May 2006. [AR 377-89] An individual is disabled if that individual has a physical or mental impairment that prevents the individual from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of

at least twelve months. 42 U.S.C. § 423(d). An ALJ applies a sequential five-step analysis to determine whether a Social Security claimant is disabled and entitled to benefits under the Social Security Act. *See Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). "The claimant bears the burden of establishing a prima facie case of disability at steps one through four." *Id.* In this case, the ALJ found that Plaintiff successfully met her burden under the first four steps of the analysis and concluded that Plaintiff had the following severe medical impairments: diabetes mellitus, a status post foot ulcer, status post stent emplacement, peripheral vascular disease, asthma, morbid obesity, dysthmic disorder, and substance abuse disorder. [AR 378-88]

Under step five of the analysis, the burden shifts to the Commissioner to show that, even though the claimant cannot perform the claimant's past work, the claimant has the Residual Functional Capacity (RFC) "to perform other work in the national economy in view of [the claimant's] age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). RFC is defined as the most an individual can still do after considering the effects of physical and/or mental limitations that affect the individual's ability to do work-related tasks. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). If the Commissioner does not meet this burden, the claimant is entitled to benefits. *See Williams,* 844 F.2d at 751.

In this case, the ALJ concluded that Plaintiff "has the residual functional capacity to perform light work . . . except [Plaintiff] requires a sit/stand option for one to two minutes every hour, can perform simple tasks and maintain attention and concentration for two hours at a time and with only occasional interaction with coworkers and supervisors." [AR 384] Based on this RFC, the ALJ concluded under step five of the analysis that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." [AR 388-89] The ALJ

relied on the VE's opinion at the hearing and found that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles." [AR 388-89]

Plaintiff filed written objections to the ALJ's decision with the Appeals Council, which declined review on February 17, 2010. [AR 366-68] On April 23, 2010, Plaintiff filed the present action for judicial review. In her Motion seeking remand or reversal, Plaintiff argues that the ALJ erred by (1) relying on the VE's testimony that Plaintiff could perform other work in the national economy, (2) failing to use a medical advisor to determine an onset of disability date between December 2003 and May 2006, and (3) concluding that Plaintiff's testimony at the May 6, 2009, hearing was not credible. Motion at 1. The Magistrate Judge has proposed to affirm the ALJ's decision. On November 17, 2011, Plaintiff filed written objections to the Proposed Disposition, arguing that (1) substantial evidence does not support the ALJ's finding under step five of the disability analysis that Plaintiff could perform other work in the national economy, and (2) the ALJ should have used a medical advisor to determine the onset date of Plaintiff's disability. Plaintiff does not object to the Magistrate Judge's credibility finding.

## STANDARD OF REVIEW

If an Article III Judge assigns a Social Security appeal to a Magistrate Judge for a proposed disposition, the Article III Judge reviews de novo the portions of a Magistrate Judge's proposed disposition to which the claimant objects. 28 U.S.C. § 636(b)(1). The Court has discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; Fed. R. Civ. P. 72(b)(3). "De novo review requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation." *Griego v. Padilla* (*In re Griego*), 64 F.3d 580, 584 (10th Cir. 1995).

The district court "reviews the Commissioner's decision to determine whether the factual

6

findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Hackett*, 395 F.3d at 1172. In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* Instead, the Court should examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks and citation omitted). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. *Williams*, 844 F.2d at 750. "[E]vidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion." *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

## DISCUSSION

### A.    Plaintiff's RFC Limitation to "Simple Tasks" is Inconsistent with Reasoning Development Level R3.

In her first objection to the Magistrate Judge's Proposed Disposition, Plaintiff argues that the ALJ erred by finding no inconsistency between the VE's testimony and the Dictionary of Occupational Titles (DOT). Plaintiff's Objections at 1. The ALJ found that Plaintiff could "perform simple tasks and maintain attention and concentration for two hours at a time." [AR 384]. The VE testified that an individual with Plaintiff's limitations could perform one job in the national economy, shipping and receiving weigher. [AR 460] According to the DOT, the job of shipping and receiving weigher requires reasoning development level R3. *See* Plaintiff's Exhibit A (Doc. 16-1), at 1 (description of shipping and receiving weigher from the DOT). Reasoning development level R3 requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving

7

several concrete variables in or from standardized situations." Plaintiff's Exhibit B (Doc. No. 16-1), at 4 (defining reasoning development levels R1 through R6). Plaintiff argues that her RFC, specifically her limitation to "simple tasks," is incompatible with jobs requiring reasoning development level R3. Plaintiff's Objections at 1-2. Plaintiff contends that the discrepancy between the VE's testimony and the DOT gave rise to a duty for the ALJ to develop the record by investigating and eliciting a reasonable explanation from the VE concerning the discrepancy. Objections at 1. The Court agrees.

In *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999), the Tenth Circuit held that an ALJ must not "elicit and rely on summary conclusions given by a VE" because doing so would "essentially shift the burden to produce and develop vocational evidence back to the claimant." Instead, the "ALJ has a duty to fully develop the record" by asking a VE to explain any conflict between the DOT and the VE's testimony. *Id.* at 1091.

The Social Security Administration codified *Haddock*'s holding in Social Security Ruling 00-4p, which provides in relevant part,

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

In *Hackett*, 395 F.3d 1168, the Tenth Circuit applied *Haddock* and SSR 00-4p to a situation similar to that presented in this case. The claimant in *Hackett* had the RFC to perform "simple and routine work tasks." *Id.* at 1176. A VE testified that the claimant could perform two

jobs described in the DOT, which both required reasoning development level R3. *Id.* at 1172, 1176. The Tenth Circuit concluded that the claimant's RFC was incompatible with jobs requiring reasoning development level R3 and noted that "level-two reasoning appears more consistent with [claimant's] RFC." *Id.* at 1176 (explaining that level R2 "requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations"). Due to this inconsistency, the Tenth Circuit reversed the ALJ's finding that the claimant was not disabled and remanded for further proceedings "to allow the ALJ to address the apparent conflict between [the claimant's] inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id.*

The Tenth Circuit consistently has reaffirmed *Haddock* and *Hackett*. *See, e.g.*, *Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (explaining that under *Hackett* a claimant limited to simple tasks might be able to perform level R1 or R2 reasoning, but not R3); *Pritchett v. Astrue*, 220 Fed. Appx. 790, 793 (10th Cir. 2007) (reversing and remanding because the claimant's RFC, limited to "simple and routine work tasks," did not match up to the mental demands required for a self-service store attendant job, which requires level R3 reasoning); *Garcia v. Barnhart*, 188 Fed. Appx. 760, 766-67 (10th Cir. 2006) (explaining that the Tenth Circuit "adheres to the rule, adopted in *Haddock* . . . , reaffirmed in *Hackett* . . . , and codified in SSR 00-4p, that an ALJ must elicit a reasonable explanation for any material conflicts between a VE's testimony and occupational information in the DOT").

As in *Hackett*, the Court concludes that Plaintiff's case should be remanded for further proceedings so that an ALJ can address the apparent inconsistency between the VE's testimony and the DOT. The ALJ found that Plaintiff had the RFC to "perform simple tasks." A limitation

to simple tasks is inconsistent with reasoning development level R3, which is required for the job of shipping and receiving weigher. Under Tenth Circuit precedent and SSR 00-4p, the ALJ had an affirmative duty to obtain a reasonable explanation for the conflict between the VE's opinion regarding Plaintiff's vocational ability and the regulatory definitions in the DOT. The ALJ erred by eliciting and relying on the VE's summary conclusion. On remand, the ALJ must develop the record by questioning the VE about the discrepancy between Plaintiff's RFC and the VE's opinion that Plaintiff could have performed other work in the national economy during the relevant time period, December 2003 to May 2006.

**B.      If the ALJ Determines on Remand that Plaintiff Was Disabled Between December 2003 and May 2006, the ALJ Must Determine an Onset Date, Consistent with Social Security Ruling 83-20.**

In her second objection, Plaintiff argues that the ALJ committed legal error by failing to obtain the services of a medical advisor to determine a disability onset date between December 2003 and May 2006. Objections at 3-5. Plaintiff contends that the ALJ's failure to use a medical advisor violated Social Security Ruling 83-20, which provides that, if an ALJ determines that a claimant is disabled, the ALJ "must also establish the onset date of disability."

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20, 1983 WL 31249.

In the Proposed Disposition, the Magistrate Judge concluded that it was not necessary

for the ALJ to infer a disability onset date between December 2003 and May 2006 because the ALJ determined that Plaintiff did not have a disability during that time period. Proposed Disposition at 8. Plaintiff argues that the Commissioner's finding that she was disabled beginning in June 2006 triggered the ALJ's duty to determine the onset date of disability using a medical advisor. Objections at 4. However, the Commissioner's determination of disability beginning in June followed Plaintiff's subsequent claim for disability, which is not before the Court. The Court is limited to reviewing the case before it and cannot review the onset of disability date determined in a separate proceeding.

On remand, the ALJ must hold further proceedings to determine whether Plaintiff was disabled between December 2003 and May 2006. If the ALJ concludes that Plaintiff was not disabled between December 2003 and May 2006, it is not necessary for the ALJ to establish a disability onset date. If, however, the ALJ decides on remand that Plaintiff was disabled during that time period, the ALJ "must also establish the onset date of disability." SSR 83-20. If the ALJ must set an onset date, the ALJ "should call on the services of a medical advisor." *Id.*

**IT IS ORDERED THAT** (1) Plaintiff's MOTION TO REVERSE OR REMAND ADMINISTRATIVE AGENCY DECISION (Doc. No. 15) is granted, and (2) this matter is remanded to Michael J. Astrue, Commissioner of the Social Security Administration, for further proceedings consistent with this Memorandum Opinion and Order.

_____

UNITED STATES DISTRICT COURT JUDGE